**UNITED STATES of America,**
**Appellant,**

v.

◦ **Willis W. CARTER.**

**No. 73-2179.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 24, 1974.

Decided June 7, 1974.

Harry R. Benner, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Warren L. Miller, Asst. U. S. Attys., were on the brief, for appellant. Harold H. Titus, Jr., U. S. Atty. at the time the record was filed and James W. Diehm, Asst. U. S. Atty., also entered appearances for appellant.

William J. Garber, Washington, D. C. (appointed by this Court) for appellee.

Before McGOWAN and TAMM, Circuit Judges, and EDWARDS,* United States Circuit Judge for the Sixth Circuit.

PER CURIAM:

This is an appeal by the United States from an order of the district court granting appellee's motion to suppress certain evidence seized from him at the time of his arrest. The question for review is whether probable cause existed for the arrest and incident search of appellee.

Both arresting officers testified at the suppression hearing and related the circumstances of appellee's arrest as follows. On the day of the arrest Officer Jenkins received a telephone call from an informer who stated that a man known to him as "Mousey" was selling narcotics near the corner of Eighth and O Streets—known to the police as a place where "any type of narcotics" could be purchased.[1] According to Officer Jenkins, the caller described the man as a heavy-set Negro male about six feet tall and wearing red shorts, a white T-shirt and a multi-colored cap. The caller also stated that the suspect had a white towel around his neck and was carrying the narcotics in a paper cup. Within three or four minutes of the call Officer Jenkins and Officer Vavrick arrived in the vicinity of Eighth and O Streets and were met by the informer. According to the testimony of the two officers, the informer then told them that the suspect had moved to the next block on O Street. The officers proceeded to the eight-hundred block of O Street where they saw a man meeting the description given by the informer. The man was sitting on the trunk of a parked car. Beside him was a towel draped over an object which had the shape of a paper cup. The two officers approached the subject from opposite directions. Vavrick seized the cup from behind and Jenkins placed the suspect under arrest. At the hearing both witnesses identified the appellee as the person they had arrested on O Street. The paper cup is alleged to have contained cocaine.

Testimony also discloses that the informant had recently been arrested by Officer Jenkins and had agreed to provide the names of persons who were selling drugs in the District of Columbia. Although the informant had not provided such information prior to the incident under discussion, he had demonstrated to Officer Jenkins a knowledge of the identities of narcotics dealers in various areas of the city which corresponded with police suspicions.[2]

---

* Sitting by designation pursuant to 28 U.S.C. § 291(a).

1. Testimony of Officer Vavrick, Tr. at 26.

2. Officer Jenkins testified as follows:

Q Well now, you indicated to the Prosecutor that he he had not given you informa-

■ "Probable cause" is a constitutional standard which prohibits arrests unless the arresting officer has knowledge or "trustworthy information" of facts and circumstances which would "warrant a man of reasonable caution" in the belief that the arrestee has committed a crime. Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925). In the present case the arrest was based not on the policeman's own knowledge of the facts but on an informant's representation that appellee was engaged in the illegal sale of narcotics on a Washington street. The facts related by the informant, if true, would clearly warrant a reasonable belief that appellee had committed a crime.

■ The only question, then, is whether this information was trustworthy. An evaluation of the trustworthiness of an informant's tip requires two inquiries—one focusing upon the credibility of the informant himself and one focusing upon the validity of his conclusion that the arrestee has committed a crime. Aguilar v. Texas, 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). The latter inquiry reveals that the tip was more than just a conclusory accusation. The informant reported that he had seen appellee selling narcotics on the street within view of the telephone booth from which he spoke to Officer Jenkins. There is no danger that the informant had obtained his information "from an offhand remark heard at a neighborhood bar." Cf. Spinelli v. United States, 393 U.S. 410, 417, 89 S.Ct. 584, 589, 21 L.Ed.2d 637 (1969). By its terms, the tip purports to be based on the first hand knowledge of the informer, a person who had previously demonstrated familiarity with the illicit narcotics trade in the District of Columbia. The first branch of the *Aguilar* analysis is therefore satisfied.

■ Our second inquiry with respect to an informant's report scrutinizes the reliability of the informant himself. The burden of the Government is to show facts and circumstances from which the officers could reasonably conclude that the informant was credible. Aguilar v. Texas, *supra*, 378 U.S. at 114. We think that the Government has met its burden. Having been arrested for petty larceny the day before, the informant had a motive to cooperate with the police. As Officer Jenkins put it, "[the informant] sort of took it that I was going to help him out" in exchange for his cooperation in apprehending narcotics dealers.[3] More significantly, the informant met the officers near the scene of the arrest and gave them additional information regarding appellee's movements. This confirmed that the informant was in fact in the vicinity at the time of the tip. Finally, the officers were able to corroborate by their own observation all aspects of the suspect's description, including the presence of a paper cup, before the arrest. Taken together, these three factors would lead a reasonable man to credit the informant's report.

■ Since the informant was credible and his information regarding criminal activity had been obtained in a reliable way, the report received by Officer Jenkins was sufficiently trustworthy to create probable cause for appellee's arrest. The legality of the arrest, of course, validates the accompanying search which produced the evidence at issue. The order of the district court suppressing that evidence is therefore reversed.

So ordered.

---

tion before that was either reliable or unreliable.

A I can't say reliable. I had met him earlier that afternoon when I came on duty and he was giving me verbal information which I could corroborate.

Q What do you mean by that, sir?

A I would ask him questions about certain areas, who was selling narcotics, who

I knew was selling narcotics. He would say So-and-So was.

THE COURT: That would check with your information, as best you had it?

THE WITNESS: Yes, sir.

Tr. at 12.

3. Tr. at 14.