**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Maynard REYNOLDS,
Defendant-Appellant.**

No. 74–2491.

United States Court of Appeals,
Fifth Circuit.

April 18, 1975.

Jack R. Nageley, Miami Beach, Fla., for Maynard Reynolds.

Robert W. Rust, U. S. Atty., Michael P. Sullivan, Asst. U. S. Atty., Donald L. Ferguson, Miami, Fla., for plaintiff-appellee.

Before DYER, MORGAN and GEE, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

Appellant challenges his conviction for conspiracy to import cocaine, alleging that certain errors were made in his trial. Finding his allegations meritless, we affirm the judgment of the district court.

I.

Viewed in a light most favorable to the government, Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1944), the facts are these. In October 1973, Jerry Foley, George Walker, Charles Swaringen, Jack Evans, and one "Mark" met at Walker's home in Greensboro, North Carolina. At this meeting, Swaringen, Evans, and "Mark" agreed to buy cocaine which Foley would import from Jamaica. The buyers also secured a commitment from Foley that he would not sell elsewhere in the area. Appellant Reynolds was mentioned as the possible source of money for the operation. At a second meeting at Walker's home on November 1, 1973, Foley received a large sum of money from Walker, Swaringen, and Evans.

Foley then traveled to Jamaica and smuggled five pounds of cocaine into the United States by strapping it to the body of Wanda Delgado, a woman he had met in Nassau. After successfully clearing customs, Foley and Delgado went to Foley's room in the Airport Hotel in Miami where they later met Swaringen and Walker. Swaringen and Walker brought $12,000 with them to be applied toward the purchase of one-half of Foley's cocaine. However, they needed $17,000 to consummate the entire purchase, so Foley put the money that Swaringen and Walker had brought in his suitcase with the cocaine and put the suitcase under his bed.

That evening Swaringen, Walker, Foley, and Delgado went to a party on a friend's boat in the Miami marina; they were to meet someone identified as "Maynard" with the rest of the money. Swaringen attempted to call Maynard Reynolds from the party several times, but was unable to reach him.

The next day, November 4, 1973, Foley told Walker that he (Foley) was tired of waiting for the rest of the money and would return to Jamaica to purchase the rest of the cocaine. Foley and Delgado then packed and left for Jamaica where Foley obtained another five pounds of cocaine. While they were gone, the suitcase containing the original five pounds of cocaine remained in Foley's room, now registered to Walker.

As Foley and Delgado attempted to return to the United States, they were arrested by customs officials. Both agreed to cooperate with the authorities and Foley allowed narcotic agents to install listening devices in his hotel room in Miami.

Maynard Reynolds arrived in Miami on the evening of November 4, 1973, and checked into the same hotel where Walker and Foley were staying. Later that evening, Reynolds came to Walker's room, where Foley's suitcase was located, and Walker and Reynolds discussed investing in cocaine. Walker allowed Reynolds to sample the cocaine in order to induce him to participate in the operation; Reynolds indicated that he was pleased with the cocaine.

Walker's and Swaringen's luggage, including Foley's suitcase, was subsequently moved to Reynolds' room, and airplane reservations were made for Reynolds, Walker, and Swaringen.

On November 5, Foley called Walker and told him to bring all the cocaine, luggage and clothing to Foley's room. Walker said that Swaringen and Reynolds had purchased one of the packages of cocaine from the suitcase for $5,000.[1] Walker then came to Foley's room and told Foley that Reynolds was pleased with the cocaine he had tried the previous night. Walker had not brought Foley's suitcase; rather, Reynolds had checked it aboard a flight destined for Greensboro, North Carolina. Walker was then arrested and an airline ticket to Greensboro was found on his person.

Agents then took Foley to the Miami airport where he identified his suitcase, which was about to be loaded onto a flight to Greensboro. Agents took the suitcase to an Eastern Airlines office where it was opened by Foley. It contained half of the cocaine he had smuggled into the United States on his initial trip to Jamaica.

Agents then took Foley to the area where the flight for Greensboro was boarding and requested him to engage Swaringen and Reynolds in conversation. When the flight was called over the public address system, agents physically detained Swaringen and Reynolds. Agent Peter Menedis took Foley aside and asked him what had transpired in the preceding conversation. Foley indicated that Swaringen had introduced Foley to Reynolds and said that they (Swaringen and Reynolds) would buy large quantities of cocaine in the future. He also said that when the plane reached Greensboro, they would give Foley $10,000.[2]

Swaringen and Reynolds were then placed under arrest. Several personal effects were seized. Reynolds was carrying a baggage claim stub which matched that attached to Foley's suitcase, about $6,000 in cash, and scraps of paper with Swaringen's Miami phone number and the figures "3000" and "6000" on them.

Maynard Reynolds was indicted on November 15, 1973, along with nine other

---

1. Walker testified that he never made such a statement. However, Foley testified that the statement was made and the evidence showed that in Foley's absence one-half of the cocaine in his suitcase disappeared and was never recovered.

2. Swaringen denied that there was any discussion of narcotics in the conversation.

persons on five counts of possession, importation, and conspiracy to import cocaine into the United States. Before the case was submitted to the jury, Reynolds was acquitted by the district court of three of the four counts in which he was named. Reynolds' motion to dismiss the remaining conspiracy count, to suppress certain evidence, and for a judgment of acquittal was denied. He was convicted of conspiracy to import cocaine into the United States in violation of 21 U.S.C. §§ 952(a) and 963 on February 20, 1974.

Appellant first claims that the evidence is insufficient as a matter of law to sustain the jury's verdict. He then goes on to contend that the trial judge should have granted defendant's motion of acquittal at the close of all of the evidence. In support of his contentions, appellant makes three arguments: (1) that the defendant was used as a "dupe" by Foley and Walker, (2) that the agreement was solely between Foley, Walker, and Swaringen and, (3) that the cocaine was already imported into the United States before the defendant joined the conspiracy.

Appellant's counsel apparently fails to perceive that his two contentions require somewhat differing analyses. This court has, on numerous occasions, articulated the standard to be applied when a jury verdict is challenged:

> Upon a challenge to the sufficiency of the government's evidence, we must sustain the verdict of guilty if there is substantial evidence, taking the view most favorable to the Government, to support it. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1944). "Substantial evidence" in this context means evidence that a reasonably minded jury could accept as adequate and sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt. United States v. Lowry, 456 F.2d 341, 344 (5th Cir. 1972) quoting United States v. Harper, 450 F.2d 1032, 1040 (5th Cir. 1971).

■ The standard to be applied by the court on a motion for acquittal is similar. United States v. James, 510 F.2d 546, (5th Cir. 1975). Whether the evidence is direct or circumstantial, the question of the defendant's guilt is for the jury to decide unless the judge, viewing the evidence in a light most favorable to the government, concludes that the jury would necessarily have to have a reasonable doubt; if he so concludes, he must grant the motion for acquittal. United States v. Warner, 441 F.2d 821, 825 (5th Cir. 1971).

■ Applying either of these standards to the appellant's contentions, we find that all three of his arguments lack merit. As to appellant's first argument—that Reynolds was used as a "dupe" by the other conspirators—we need only point out that there was substantial evidence from which the jury could have concluded that appellant was a willing participant in the conspiracy. Moreover, viewing the evidence most favorably to the government, the district court was correct in overruling the appellant's motion for a judgment of acquittal.

Appellant's other two arguments can best be analyzed in combination. Appellant claims that the agreement to import cocaine was among only Foley, Walker, and Swaringen, and that if Reynolds joined the conspiracy, he did so after the cocaine was already inside the United States.

There was certainly evidence in the record indicating that appellant was involved in the conspiracy prior to his arrival in Miami. Testimony at trial showed that, from the outset of the conspiracy, Reynolds was mentioned as the source of money and repeated efforts were made to contact him. When he arrived in Miami, Reynolds had $9,000 in his possession. When he was arrested, he was carrying a piece of paper on which Swaringen's phone number was written. The fact that the paper bore the area code for Swaringen's hotel room, unnecessary for a local call, is additional evidence that Reynolds had already agreed to participate in the deal. In addition, Walker told Foley that Reynolds "would be good for three or four kilos" and Foley testified that Reynolds and Swaringen agreed to give

him $10,000 when he reached Greensboro. Foley also testified that Walker said that he (Walker) sold Reynolds half of the first shipment of cocaine.

■ The essential elements of a conspiracy are an agreement by two or more persons to combine their efforts for an illegal purpose and an overt act by one person in furtherance of the agreement. United States v. Perez, 489 F.2d 51, 61 (5th Cir. 1973); United States v. Warner, 441 F.2d 821, 830 (5th Cir. 1971). Where an agreement or common scheme of conspiracy exists, "slight evidence" is all that is necessary to connect an individual defendant to that conspiracy. United States v. Rodriguez, 498 F.2d 302, 312 (5th Cir. 1974); Lopez v. United States, 414 F.2d 909 (5th Cir. 1969); Bradford v. United States, 413 F.2d 467 (5th Cir. 1969). Circumstantial as well as direct evidence may be used to prove the appellant's connection with the conspiracy. Holland v. United States, 348 U.S. 121, 140, 75 S.Ct. 127, 99 L.Ed. 150 (1954).

■ Even under these standards, the evidence of appellant's participation in the conspiracy prior to the importation is of questionable sufficiency to support the jury's verdict. However, a conspiracy to import illicit drugs does not automatically terminate when the substance crosses the border. See United States v. Guajardo, 508 F.2d 1093 (5th Cir. 1975). Transporting the cocaine to Greensboro was an act integral to the conspiratorial agreement to remove the contraband from the border area to the area in which it was to be sold. See id. There is also precedent indicating that if the criminal aim of the conspiracy is to make a profit by illegal means, the conspiracy continues until the fruits of the crime have been disposed of. United States v. Iacovetti, 466 F.2d 1147, 1153 (5th Cir. 1972); Atkins v. United States, 307 F.2d 937, 940 (9th Cir. 1962).

■■ Since the conspirators here intended the conspiracy to continue at least until the cocaine reached Greensboro, appellant's actions subsequent to the time the cocaine crossed the border are sufficient to connect him with the conspiracy. Moreover, there was evidence from which reasonable men could conclude that appellant joined the conspiracy with knowledge of the unlawful enterprise and acted to further it. The appellant is therefore liable for the acts of other conspirators, even if those acts occurred prior to his joinder. United States v. Brasseaux, 509 F.2d 157 (5th Cir. 1975); United States v. Brown, 495 F.2d 593, 599 n. 5 (1st Cir. 1974); United States v. Knight, 416 F.2d 1181, 1184 (9th Cir. 1969); Hernandez v. United States, 300 F.2d 114, 122 (9th Cir. 1962).

Considering all of the evidence then, the trial judge's denial of the motion for acquittal was proper, and the jury's verdict was based upon sufficient evidence.

■ Appellant next argues that the trial court erred in denying the defendant's motion to suppress the evidence taken from his person subsequent to his arrest at the airport. The findings of a district court on a pre-trial motion to suppress are binding upon this court unless they are clearly erroneous. United States v. Gunn, 428 F.2d 1057, 1060 (5th Cir. 1970).

■ Probable cause for a warrantless arrest requires that the arresting officer have either actual knowledge or "trustworthy information" of facts and circumstances which could "warrant a man of reasonable caution" in believing that the arrestee has committed a crime. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

■ Not only was the information that agent Menedis received from Foley immediately prior to Reynolds' arrest sufficient to support a finding of probable cause, see United States v. Carter, 162 U.S.App.D.C. 132, 498 F.2d 83 (1974), but in addition, agents knew that the suitcase which Walker said that Reynolds checked to Greensboro contained cocaine. We therefore hold that the agents had probable cause to make a valid warrantless arrest of Reynolds and

a reasonable search incident to that arrest.

We have examined appellant's other allegations of error and we find them utterly devoid of merit.

Affirmed.