Calvin F. SMITH on behalf of himself and all others similarly situated, Appellant,

v.

William B. SAXBE, American Embassy in New Delhi, c/o Department of State, et al.

No. 75–2043.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 29, 1976.
Decided June 23, 1977.

Lawrence H. Mirel, Washington, D. C., for appellant. David T. Austern, Washington, D. C., was on the brief, for appellant.

Judith Hetherton, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and William D. Pease, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before LEVENTHAL, ROBINSON and WILKEY, Circuit Judges.

Opinion for the Court filed by Circuit Judge LEVENTHAL.

LEVENTHAL, Circuit Judge:

This case comes before us on appeal from an order of the District Court granting summary judgment against plaintiff Calvin

Smith, who instituted this action for damages and declaratory relief, alleging violations of his constitutional rights. We agree with the District Court that there existed no genuine issue of material fact and that defendants were entitled to their judgment as a matter of law.

## I. BACKGROUND

In 1973, plaintiff was convicted of several criminal offenses in the United States District Court[1] and committed to Lorton Reformatory, a District of Columbia Department of Corrections facility. Beginning in late 1973, the Department of Corrections permitted him to leave Lorton and visit the District of Columbia for short periods under its furlough program[2] in the belief that he would honor the trust placed in him.[3] His

furloughs came to an abrupt halt on September 25, 1974.

On that date, plaintiff was arrested for escape[4] by five agents of the Federal Bureau of Investigation at Union Station as he passed through a gate reserved for passengers with tickets and approached a train bound for New York notwithstanding the condition of his furlough that restricted him to the District of Columbia. The agents discovered a shotgun and four shells in a suitbag he carried. After taking him to their field office for booking, they returned him to custody. Shortly thereafter, he was transferred to the federal penitentiary in Lewisburg, Pennsylvania.[5] No prosecution was brought against him on the escape charge.

On February 27, 1975, plaintiff, by his counsel, filed this action[6] against William

---

1. He was sentenced to life imprisonment for murder (22 D.C.Code § 2401), five to fifteen years imprisonment for burglary while armed (22 D.C.Code §§ 1801(a), 3202), and five to fifteen years imprisonment for armed robbery (22 D.C.Code §§ 2901, 3202). These sentences were to run concurrently. We affirmed these convictions on February 11, 1974. *United States v. Joyner and Smith*, 160 U.S.App.D.C. 384, 492 F.2d 650, *cert. denied*, 419 U.S. 852, 95 S.Ct. 94, 42 L.Ed.2d 83 (1974).

2. According to the complaint, plaintiff received over fifty furloughs between late 1973 and September 1974.

3. Congress empowered the Attorney General to initiate furlough programs; 18 U.S.C. 4082(c)(1) provides:

   (c) The Attorney General may extend the limits of the place of confinement of a prisoner as to whom there is reasonable cause to believe that he will honor his trust, by authorizing him, under prescribed conditions, to—

   (1) visit a specifically designated place or places for a period not to exceed thirty days and return to the same or another institution or facility. An extension of limits may be granted to permit a visit to a dying relative, attendance at the funeral of a relative, the obtaining of medical services not otherwise available, the contacting of prospective employers, the establishment or reestablishment of family and community ties or for any other significant reason consistent with the public interest; . . .

   The Attorney General delegated his authority over the furlough program at Lorton to the District of Columbia Department of Corrections, 28 C.F.R. § 0.99, Appendix to Subpart Q

(1974), and the Department promulgated guidelines to govern the furlough program. District of Columbia Department of Corrections Order 4920.1A (Aug. 28, 1974). These guidelines made furloughs available to any Lorton inmate who the Department believed would honor the trust in him, regardless of the crime for which he had been convicted.

   On October 1, 1974, the Attorney General curtailed the program, making it unavailable except in exceptional circumstances to inmates convicted of certain crimes unless they were within six months of a firm release date. 39 Fed.Reg. 36009–36010 (October 7, 1974).

4. 18 U.S.C. § 751(a).

5. The record indicates that following arrest and before transfer to Lewisburg, plaintiff was taken to the U. S. District Court Cell block and the District of Columbia Jail. It also indicates that plaintiff was transferred from Lewisburg to the Baltimore City Jail on November 26, 1974 and then moved to the District of Columbia Jail on December 7, 1974. Only the transfer from Lorton to Lewisburg was alleged to violate plaintiff's rights.

6. Plaintiff brought this action both in his individual capacity, and as the representative of the class of Lorton inmates who were eligible for furlough prior to the Attorney General's order curtailing the furlough program. *See* note 3, *supra*. However Smith did not move for a certificate under Rule 23(c)(1) of the Federal Rules of Civil Procedure and Rule 1–13(b) of the District Court's Rules. Therefore, we treat only the issues arising out of Smith's individual action.

Saxbe, the former Attorney General, Clarence M. Kelley, the Director of the Federal Bureau of Investigation, certain unknown agents of the Federal Bureau of Investigation who participated in plaintiff's arrest, and Edward Fitzgerald, an employee of the Public Defender Service and an FBI informant, according to the complaint.[7] Plaintiff maintained that the defendants violated his fourth amendment rights by arresting him without probable cause, and by failing to present or arraign him before a magistrate after his arrest.[8] The defendants also allegedly violated Smith's due process rights by not according him administrative hearings before his furlough terminated and before he was transferred from Lorton Reformatory to Lewisburg Penitentiary. Relying upon the fact that the Attorney General had curtailed the Washington, D. C. furlough program six days after his arrest,[9] plaintiff also alleged that the defendants had conspired together to frame him on an escape charge in order to marshal public opinion against the furlough program. According to his complaint, defendant Fitzgerald lured plaintiff to Union Station on the pretext of giving him copies of certain legal documents. At the station, Fitzgerald allegedly informed Smith that he, Fitzgerald, had to catch a train and that his companion was missing. Fitzgerald then handed Smith a suitbox and a railroad ticket and asked him to help him search for his missing companion. Plaintiff claimed that he was arrested while searching for Fitzgerald's companion and that the agents knew that he did not intend to board the train because the defendants had fabricated the incriminating situation.

On June 30, 1975, defendants Kelley, Saxbe, and the agents ("federal defendants") moved for summary judgment.[10] In support of their motion, they submitted affidavits of the seven agents who had participated in the arrest. These interlocking affidavits contradicted plaintiff's allegation of a trumped-up arrest. Each affidavit provided detailed accounts of the events leading up to plaintiff's arrest, demonstrating that the arrest was made in the course of regular law enforcement activities. According to these seven affidavits, the arrest occurred because the agents received a tip as to Smith's criminal plans from an informant who was personally acquainted with Smith.[11]

On August 29, 1975, plaintiff responded to the federal defendants' June 30th motion by submitting a "Statement of Material Facts As to Which a Genuine Issue Exists", and a memorandum of points and authorities. Plaintiff did not file any affidavits in opposition to the government's motion. By order dated September 12, 1975, the District Court granted the federal defendants' motion for summary judgment and dismissed the complaint against Edward Fitzgerald for lack of prosecution. Plaintiff appealed from the grant of summary judgment.[12]

## II. ARREST

Plaintiff's first challenge to the ruling below is based upon his contention that summary judgment was improper because factual issues relating to the existence of probable cause for the arrest and of conspiracy were raised by his complaint. We find this contention unavailing in light of his failure to adduce evidentiary support for his theory of the facts when confronted

7. Plaintiff also named the District of Columbia as a defendant but later voluntarily dismissed the complaint as to that defendant. Appellee's Appendix [hereinafter App.] at 2.

8. Plaintiff also alleged that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment, as well as false arrest, false imprisonment, assault and battery, malicious prosecution and malicious abuse of process. Plaintiff does not press these claims on appeal.

9. *See* note 3, *supra*.

10. They moved in the alternative for dismissal of the complaint for lack of jurisdiction.

11. App. at 32–64.

12. Plaintiff did not take an appeal from the dismissal of the complaint against Fitzgerald for want of prosecution, and the propriety of this order is therefore not before this court.

with the defendants' motion and supporting affidavits.

■ Under Rule 56(e) of the Federal Rules of Civil Procedure, a party opposing a motion for summary judgment cannot rest on the allegations in his complaint, but must come forward with evidentiary affidavits; otherwise, the undisputed statements contained in the movant's affidavits are taken as true. *Fitzke v. Shappell*, 468 F.2d 1072, 1077 (6th Cir. 1972). The movant's opponent can stave off summary judgment by filing an affidavit under Rule 56(f) explaining why "he cannot . . . present by affidavit facts essential to justify his opposition."

■ In the instant case, plaintiff failed to create an issue of fact as to the arrest. Notwithstanding his allegations that the defendants conspired to falsely create the impression that he was escaping and that the agents lacked probable cause to arrest him, the District Court properly rejected these claims.

Plaintiff's allegations would have warranted a trial if they had been substantiated, but they were not. They were contradicted by the seven agents' sworn affidavits, which were uncontroverted by evidentiary affidavits. The agents' affidavits established probable cause to arrest based on information reliably obtained by a reliable informant. *See Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), *United States v. Carter*, 162 U.S.App.D.C. 132, 498 F.2d 83 (1974). The affidavits established (a) that the informant was reliable: he had accurately informed the agents that Smith would attempt to recover a briefcase containing a gun at Union Station only one month previous to the arrest, and (b) that he had acquired his information in a reliable manner: he told the agents he had acquired his detailed information first hand from Smith who attempted to enlist the informant as an accomplice in his plan to go to New York.

■ Even without relying upon the informant, the agents knew, according to their affidavits, that Smith's furlough restricted him to the District of Columbia, and they did not arrest him until he passed through the gate reserved for boarding passengers and approached the train. That provided probable cause to believe that Smith was committing the felony of escape in their presence. *See Ford v. United States*, 122 U.S.App.D.C. 259, 352 F.2d 927 (1965).

The affidavits also established that defendants Saxbe and Kelley had no involvement with the arrest;[13] each agent attested to the fact that he had no knowledge of any misconduct on the part of any federal official and no contact with defendants Saxbe or Kelley or their representatives.[14]

■ Plaintiff sought to rely upon his bare complaint to create an issue of fact. That course is impermissible under Fed.R.

---

**13.** We note that plaintiff has not alleged, either in the district court or in this court, a conspiracy between defendants Saxbe, Kelley and Fitzgerald which existed without the participation of the FBI agents. We cannot construe the allegations of the complaint as charging that FBI Director Kelley and former Attorney General Saxbe took part in a conspiracy without going through or involving the FBI agents. Such a conspiracy would have to be alleged clearly and with specificity before a court would require proof of its nonexistence in a summary judgment proceeding. Such a conspiracy was never the thrust of the complaint or pressed in the briefs.

Moreover, the federal defendant's "Statement of Material Facts As To Which There Is No Genuine Issue" specifically asserted that Attorney General Saxbe and FBI Director Kelley were not involved in Smith's arrest. This statement was not rebutted by appellant who merely asserted in his "Statement of Material Facts As To Which A Genuine Issue Exists" that there was an issue as to whether "Defendants Saxbe and Kelley acted improperly in forming policy or procedures which proximately caused the deprivation of rights . . . ." App. at 65.

**14.** According to the affidavits, some of the agents met with an Assistant United States Attorney once in August and twice in September after receiving the informant's tips, solely for the purpose of discussing when Smith technically would be an escaped prisoner in violation of the 18 U.S.C. § 875(a). App. at 43, 44, 46–47. The affidavits established that no wrongdoing or plotting occurred at these meetings.

Civ.P. 56(e). *See First National Bank v. Cities Service Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Williams v. Howard University,* 174 U.S.App.D.C. 85, 87, 528 F.2d 658, 660 (1976). Summary judgment was properly awarded to defendants for failure of Smith to raise a genuine issue of material fact as to the arrest.

### III. HEARINGS

Plaintiff's remaining attacks on the judgment challenge only the legal conclusions of the district court. The material facts relating to the remaining issues are not in dispute.[15] Plaintiff first urges that the defendants violated his due process rights by failing to accord him an administrative hearing on the termination of his furlough.

■ Smith's interest in continuing his ongoing furlough on September 25th and his expectation of receiving future furloughs is not a "liberty" interest entitled to procedural safeguards under the due process clause of the Fifth Amendment. We are guided by two recent Supreme Court decisions, *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), and *Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976). They make clear that even substantial adverse changes in confinement do not automatically implicate due process safeguards. Unless the government has treated the benefit as one defeasible only on the occurrence of specified events, withdrawal of the benefit falls outside constitutional protection. Where withdrawal of the benefit is within the

discretion of the authorities, no protected liberty interest in the benefit arises. Applying this analysis in *Meachum v. Fano, supra,* the Court rejected a prisoner's claim of entitlement to a hearing in connection with an involuntary transfer to a less favorable prison on the ground that the state law in that case entrusted transfer decisions to the discretion of prison officials.

■ The statute governing furlough, 18 U.S.C. § 4082(c)(1), places the decision to grant furlough squarely within the discretion of the Attorney General of the United States. Under section 4082(c)(1), the Attorney General may grant furlough if he has a reasonable belief that the prisoner is able to "honor his trust." [16] A prisoner's good conduct in prison and on furlough would normally lead to a belief that the prisoner will honor his trust, but it does not compel or require such a belief. The statute does not provide that once a prisoner has been granted a furlough, he must be accorded subsequent furloughs absent the occurrence of specified events. Subsequent furlough grants, like the initial furlough grant, are committed to the discretion of the Attorney General and are contingent on his then reasonable belief regarding the prisoner's trustworthiness. Similarly, neither Section 4082(c)(1) nor administrative regulations restrict the authority of the Attorney General to terminate an ongoing furlough.[17] Since section 4082(c)(1) confers no right on a prisoner to furlough which would be defeasible only upon specified events, plaintiff's interest in furlough cannot be characterized as a "liberty" interest originating in law.[18]

---

**15.** The District Court did not specify the legal theory for its conclusion that the defendants were entitled to judgment as a matter of law. We need not resolve whether the alternative arguments which defendants urged in support of their motion would suffice for summary judgment in view of our conclusion that summary judgment was properly granted in this case because appellant's constitutional rights were not infringed by defendants' actions.

**16.** *See* note 3, *supra.*

**17.** Plaintiff does not claim and we could not conclude that the decision to terminate his furlough was arbitrary or capricious or an abuse of discretion; the authorities possessed a well

grounded suspicion that plaintiff engaged in criminal misconduct while on furlough, and therefore had an adequate basis for believing he could not honor the trust placed in him.

**18.** Nor can we conclude that the Due Process Clause by its own force requires hearings whenever furloughs are terminated. We are not unmindful that a prisoner on furlough enjoys a freedom outside the prison walls not enjoyed within, notwithstanding conditions as to where he may go and what he may do. Nonetheless, unlike the parolee or the probationer considered in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) and *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct.

█ The same Supreme Court opinions and reasoning require us to reject plaintiff's contention that he was entitled to an administrative hearing before transfer from Lorton Reformatory to Lewisburg Penitentiary. The statutes governing transfer of appellant, 24 D.C.Code § 425, and 18 U.S.C. § 4082(b), explicitly commit prison transfer decisions to the discretion of the Attorney General.[19] Disposition of both due process claims by summary judgment was proper.

[9] Plaintiff's final claim is that he possessed a Fourth Amendment "right to be free from incarceration without being formally presented or arraigned before a magistrate" following his September 25th arrest for escape while on furlough.[20] In *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), the Supreme Court held that the Fourth Amendment mandates a probable cause hearing to justify continued detention of a suspect pending trial. However the *Gerstein* rationale is inapplicable to this case, because plaintiff was committed to post-trial rather than pretrial custody.

The simple termination of plaintiff's furlough without prosecution cannot be considered tantamount to a criminal prosecution. *See Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), (probation and parole revocations are not criminal prosecutions). The Fourth Amendment procedures accorded in criminal prosecutions had no application to this case.

1756, 36 L.Ed.2d 656 (1973), the furloughed prisoner is on a short string. His freedom is not potentially unlimited in duration even upon complete compliance with the official rules. (Section 4082 limits furlough to a maximum duration of thirty days.)

In *Meachum v. Fano, supra*, the Court stated that "given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him  .   .   .  so long as the conditions of confinement do not otherwise violate the Constitution." 427 U.S. at 224, 96 S.Ct. at 2538 (1976). Like the defendants in *Meachum, supra*, plaintiff was constitutionally deprived of his liberty pursuant to conviction. The fact that he was returned to actual custody without hearing did not infringe any due process rights because the degree of confinement to which plaintiff was subjected after termination was within the sentence imposed upon him after due procedure.

19. 24 D.C.Code § 425 states, in pertinent part:
   All prisoners convicted in the District of Columbia for any offense  .   .   .  shall be committed,  .   .   .  to the custody of the Attorney General of the United States or his authorized representative, who shall designate the places of confinements where the sentences of all persons shall be served. The Attorney General may designate any available, suitable, and appropriate institutions, whether maintained by the District of Columbia Government, the federal government, or otherwise, or whether within or without the District of Columbia. The Attorney General is also authorized to order the transfer of any such persons from one institution to another if, in his judgment, it shall be for the well-being of the prisoner or relieve overcrowding or unhealthful conditions in the institution where such person is confined, or for other reasons.

18 U.S.C. § 4082(b) provides:
   The Attorney General may designate as a place of confinement any available, suitable, and appropriate institution or facility, whether maintained by the Federal Government or otherwise, and whether within or without the judicial district in which the person was convicted, *and may at any time transfer a person from one place of confinement to another.* (Emphasis added.)

20. Appellant's Br. at 25.