**Louis C. OSTRER, Plaintiff/Petitioner,**

v.

**Dennis LUTHER, Warden, Federal Correctional Institution, Danbury; Norman A. Carlson, Director, Bureau of Prisons; Daniel Lopez, Regional Commissioner, United States Parole Commission; Ben Baer, Chairman, United States Parole Commission; and Donald L. Chamlee, Chief, Division of Probation, Defendants/Respondents.**

No. Civ. B 83–236 (WWE).

United States District Court,
D. Connecticut.

Aug. 30, 1985.

Benson B. Weintraub, Bierman, Sonnett, Shohat & Sale, Miami, Fla., pro bono publico.

Thomas Riley, Asst.U.S.Atty., New Haven, Conn., for defendants/respondents.

RULING ON MOTION TO DISMISS

EGINTON, District Judge.

Louis C. Ostrer, through counsel, brings this action to correct alleged inaccuracies in his presentence investigation report ("PSI"). His requests either declaratory judgment that the challenged information is false, or alternatively, a writ of habeas corpus or mandamus to prohibit the United States Bureau of Prisons ("BOP") from considering the allegedly inaccurate PSI. He argues that he cannot receive a fair parole hearing, consistent with due process, because the Parole Commission ("the Commission") would be obliged to consider the false PSI.

Plaintiff also alleges that BOP has already relied on the challenged PSI in designating him a Central Inmate Monitoring ("CIM") case, and that this designation has denied Ostrer his right of equal protection under the law.

Defendants have moved to dismiss the complaint on three grounds: (1) plaintiff's failure to exhaust his administrative remedies; (2) failure to state a claim upon which relief can be granted; and (3) the court's lack of subject matter jurisdiction. For the reasons set forth below, the complaint is DISMISSED.

*Standard of Review*

In ruling on a motion to dismiss for failure to exhaust administrative remedies, the court need not accept plaintiff's allegations as true. *See, e.g., Vaca v. Sipes*, 386 U.S. 171, 186, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967) (plaintiff may overcome motion to dismiss for failure to exhaust administrative remedies only if he can prove certain facts). The motion is determined by a test of the parties' actual proof. The court may consider affidavits submitted by the parties. *Cf. Bowman v. Grolsche Bierbrouwerij B.V.*, 474 F.Supp. 725, 728 (D.Conn.1979). The court must decide whether plaintiff's efforts to proceed with administrative remedies would have been "wholly futile." *Glover v. St. Louis-San Francisco Railroad*, 393 U.S. 324, 330, 89 S.Ct. 548, 557, 21 L.Ed.2d 519 (1969).

*Convictions and Presentence Investigation Reports*

On April 23, 1980, Louis C. Ostrer was convicted of conspiracy to embezzle, embezzlement, interstate transportation of stolen property, conspiracy to evade payment of taxes, income tax evasion, and

**1570**

racketeering influence in corrupt organizations, under the RICO statute. On December 15, 1980 he was sentenced by the Honorable Kevin T. Duffy in the Federal District Court, Southern District of New York, to a term of 20 years. Exhibit to the Verified Amended Complaint ("Ex.") E at 2.

Ostrer challenged the PSI prepared for this sentencing, claiming that it was "replete with error on almost every page." Ex. B at 3. The sentencing court declined to make the changes in the PSI requested by Ostrer. Ex. B at 9.

Ostrer began service of his twenty year sentence on February 23, 1981.

Subsequently, he was convicted of racketeering conspiracy, in violation of the RICO statute, in the Southern District of Florida. He was sentenced by the Honorable James W. Kehoe on September 14, 1982 to a seven year term. Ex. C. At Ostrer's request, Judge Kehoe directed the Supervising Probation Officer to prepare a new PSI, based on the officer's independent investigation.

The two PSIs have substantial differences. See Ex. G. Perhaps the most important of these are the statements of the New York report that Ostrer maintained "a relationship with various reputed organized crime figures," and that he was "a financial advisor to the underworld." Complaint par. 45. Plaintiff claims this information is false. The Florida report contains no such statements. Both PSIs are on file with the Commission. Ex. G.

Ostrer contends that BOP designated him a ("CIM") case because of the allegedly false information in the New York PSI. Ostrer further contends that BOP denied him furlough on four separate occasions because of his CIM designation.

Ostrer has refused an initial parole hearing, so that no parole determination has been made by the Commission. Instead, Ostrer has filed the instant action, seeking to effectively expunge the challenged information from the New York PSI.

*Administrative Remedies Sought for Custody Reduction*

On December 17, 1981, Plaintiff filed a Request for Administrative Remedy, a "BP 9," under 28 C.F.R. 542.10, seeking to amend BOP's decision to deny him "out" custody. The Danbury Warden issued a written response on February 1, 1982, stating that Ostrer was denied out custody because he had completed only one year of incarceration on a 20 year sentence, and that "a custody reduction at this time would be imprudent." The Warden also stated that Ostrer's CIM status had no bearing on the decision to refuse him out custody.

Finally, the Warden noted that when the Commission, after an initial parole hearing, decreased Plaintiff's projected length of sentence, then his custody level would be reevaluated. But as Ostrer had waived his initial hearing, his parole guidelines "remained as initially projected," and his custody level could not be reevaluated. Exhibit 1 to Plaintiff's Traverse.

Ostrer unsuccessfully appealed this decision to the BOP Regional Board, filing a "BP 10." The Board reiterated the Warden's reasoning, stating that out custody was denied because Ostrer had served only the first year of a 20 year sentence. After discussing other factors which might be considered in a custody decision, including prior good behavior, furloughs, and personal recognizant bonds and awards, the Regional Director added that "Information from the PSI is another legitimate consideration since it is an official court document." Exhibit 2 to Plaintiff's Traverse.

Ostrer's final appeal to the BOP Central Board, conducted through a "BP 11" filing procedure, affirmed the Warden's decision, again noting that custody reduction "would be premature based upon the length of time remaining to be served" on the 20 year sentence. Exhibit 3 to Plaintiff's Traverse.

Subsequently, Ostrer requested that the Assistant Warden review "additional information" regarding his request for community custody. This "information" included

the materials prepared in Ostrer's efforts to have his New York PSI modified. The Assistant Warden compared the two PSIs and concluded that he "would not object to having the Unit Team entertain a custody reduction when Mr. Ostrer receives a Presumptive Parole date." Ex. G. This presumptive parole date could only be set after an initial parole hearing. As Plaintiff has continued to waive his initial hearing, no presumptive parole date has been set.

### Equal Protection Claims

Plaintiff contends that the decisions to classify him as a CIM case, and the refusal to reduce his custody were both based on the New York PSI's allegedly false description of his organized crime association. Plaintiff further argues that this reliance on false information has caused him to be "singled out and denied equal protection under the law...." Complaint par. 42. The court denies both contentions.

■ The central reasoning of the Warden's decision to deny Ostrer out custody, as well as the Regional and Central affirmations of the Warden's decision, was that it was inappropriate to grant out custody to a prisoner with 19 years remaining to be served.

The court finds that Ostrer's custody decisions were not substantially based on the challenged information of the New York PSI.[1] Accordingly, the court dismisses the factual premise of Plaintiff's equal protection argument.

The court also takes note of the line of cases holding that a prisoner's interest in obtaining a furlough "cannot be characterized as a 'liberty' interest originating in law." *Smith v. Saxbe*, 183 U.S.App.D.C. 210, 215, 562 F.2d 729, 734 (D.C.Cir.1977). *See, e.g., Pugliese v. Nelson*, 617 F.2d 916, 923 (2d Cir.1980) ("a prisoner's interest in avoiding CMC [Central Inmate Monitoring Case] classification does not entitle him to due process protections"); *Greenholtz v. Inmates of the Nebraska Penal and Cor-*

*rectional Complex*, 442 U.S. 1, 11, 99 S.Ct. 2100, 2105, 60 L.Ed.2d 668 (1979) (a prisoner's mere hope for parole, unsupported by a basis for claiming entitlement to it, does not create a liberty interest sufficient to warrant due process protection).

### Administrative Remedies Sought to Change the PSI

■ The Code of Federal Regulations states, "The Bureau of Prisons has established an Administrative Remedy Procedure through which an inmate may seek formal review of a complaint which relates to any aspect of his imprisonment *if less formal procedures have not resolved the matter.* [Emphasis added]." 28 C.F.R. 542.10.

Plaintiff followed the prescribed administrative review in seeking custody reduction, filing the forms BP 9, 10, and 11 in order to appeal his custody decision before the Regional and Central Boards. But Plaintiff did not follow these procedures in seeking to amend his New York PSI. The court notes that Ostrer's custody appeals did not petition BOP to correct his New York PSI.

An administrative remedy to correct the challenged PSI is not open to Ostrer, because he has refused his initial parole hearing. Having never permitted the Commission to determine whether the New York PSI is correct, Ostrer cannot file an appeal to BOP.

Instead, Ostrer's attorney requested that the Regional Counsel of the Parole Commission and of the Bureau of Prisons stipulate that the agencies "not rely upon demonstrably inaccurate information appearing in the New York PSI." Ex. L. *See also* Ex. N. Ostrer's attorney, Benson Weintraub, sent the two Counsel copies of exhibits submitted in the present action, including a deposition of the Probation Officer who authored the Florida PSI. Through these exhibits, Weintraub hoped to "establish the validity of Ostrer's claims" of inaccuracy. Ex. L.

---

**1.** The court notes that a memorandum from Ostrer's Unit Manager to the Danbury Assistant Warden recommended that Ostrer's request for custody reduction be denied, partly because his

"history is interlaced with questionable business practices. (Documented by PSI)." However this rationale was not adopted by the Warden or either of the appeal boards. Ex. H

Henry Sadowski, Regional Counsel for the Commission, advised Weintraub that it would not be possible to make any determination about possible conflicts between the two PSIs prior to Ostrer's initial parole hearing. Ex. Q. Ira B. Kirschbaum, Assistant General Counsel, Federal Prison System, informed Weintraub that the information submitted by Ostrer could not "overcome the presumption of regularity that must attach to [a PSI]." Ex. I.

Plaintiff pursued no further administrative remedies in seeking to correct the challenged PSI. Defendants argue that the instant action should therefore be dismissed for Ostrer's failure to participate in an initial parole hearing and his failure to exhaust the available administrative remedies.

### Futility of Plaintiff's Administrative Remedies

The Regional Counsel of the Commission and of BOP have considered Ostrer's claims against the New York PSI, and refused to grant his requested relief. Ostrer therefore contends that any further consideration by examiners at an initial parole hearing would be redundant. He claims that the "substance" of a parole hearing has already occurred.

Certainly a plaintiff need not exhaust his administrative remedies if further efforts would be futile. *Glover v. St. Louis-San Francisco Railway*, 393 U.S. 324, 330, 89 S.Ct. 548, 551, 21 L.Ed.2d 519 (1969). Yet Plaintiff has not shown that the available administrative remedies would be futile here.

It is well-established that there are "ample administrative remedies to prevent harm due to the allegedly inaccurate [presentence investigative report]." *Maynard v. Havenstrite*, 727 F.2d 439, 441 (5th Cir. 1984). *See, e.g., United States v. Legrano*, 659 F.2d 17, 18 (4th Cir.1981); Exhibit to the Verified Amended Complaint T ("Ex. T") *Rivera v. United States Parole Commission*, No. B 83–349 (EBB), mem. dec. at 4 (D.Conn. Mar. 21, 1985).

Ostrer may contest the report at his initial parole hearing, presenting the same

evidence which he has submitted to this court. The Federal Regulations provide, "If a prisoner disputes the accuracy of the information presented [in a PSI], the Commission shall *resolve such disputes by a preponderance of the evidence* standard . . . [Emphasis added]." 28 C.F.R. 2.19(c). Should the hearing examiners decide against him, Plaintiff may appeal the decision to the BOP Regional and Central Boards. 28 C.F.R. 542.10.

Ostrer's request that the Regional Counsel of the Commission and of BOP correct his PSI was refused, because Counsel could not overcome the "presumption of regularity" which attached to the report. Thus the examiners conducting an initial parole hearing have powers *beyond* those of Regional Counsel; for the examiners can make a factual determination regarding Ostrer's claims against the PSI.

The court therefore concludes that Ostrer has failed to show that pursuit of available administrative remedies would be futile.

### Ability of Parole Hearing Examiners to Resolve Plaintiff's Dispute

Regardless of the Commission's legal power, as analyzed in the foregoing discussion, to resolve the factual dispute concerning the PSI, Ostrer claims that the Commission is "inadequate" to do so. Citing 18 U.S.C. § 4207(3), Plaintiff notes that the Commission is *obliged* to consider a prisoner's presentence investigation report before making a parole decision. Plaintiff argues that the Commission cannot disregard any part of the New York PSI, because it *must* "consider" *all* portions of the report.

This argument is refuted by the clear language of 28 C.F.R. 2.19(c): "If a prisoner disputes the accuracy of the information presented [in a PSI], the Commission shall resolve such disputes by a preponderance of the evidence standard. . . ." The Commission is not obliged to *rely* on a disputed PSI. Rather it is obliged to *consider* both the report and plaintiff's claims against it, and to resolve the dispute.

Plaintiff also contends that the administrative remedy available under the BP 9,

BP 10, BP 11 system is inadequate to afford his requested relief. Specifically, the examiners and the appeal boards cannot expunge portions of the PSI or issue a declaratory judgment that the PSI is inaccurate.

Neither of these remedies are available administratively; both may be granted only by this court. Nevertheless, neither remedy is necessary to give Plaintiff the relief that he seeks. After considering Plaintiff's claims, the Commission and the appeal boards can decide not to rely on the disputed PSI. Such a decision would ensure that the challenged PSI played no part in Ostrer's parole determinations. Thus the object of this action would be achieved.

Plaintiff's last argument is that "the initial parole hearing does not afford ... a meaningful opportunity, consistent with due process, to establish his right to requested relief...." Contrary to this assertion, the initial hearing would afford Plaintiff ample opportunity to present his evidence and make full argument against the alleged inaccuracies of the PSI. *Maynard,* 727 F.2d at 441. Moreover, as Plaintiff is not eligible for parole until October 15, 1987, Exhibit 3 to Plaintiff's Traverse, he would not be prejudiced by the delay caused by a parole hearing determination. For there is no real likelihood that Plaintiff, even if correct in his claims, would be released within the next six months. Ex. T *Rivera,* B 83–349 (EBB), mem. dec. at 4–6.

Finally, the court holds, contrary to Plaintiff's assertion, that plaintiff's interest in amending the PSI does not entitle him to due process protections. For even if the PSI were to be expunged, the possibility of parole would be within the complete discretion of the Commission. Ostrer can show no likelihood of being granted parole, for no initial parole determination has taken place. Therefore no rights of due process can attach to his interest. *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex,* 442 U.S. 1, 11, 99 S.Ct. 2100, 2105, 60 L.Ed.2d 668 (1979).

**2.** Such a claim would be beyond the jurisdiction of this court, as a "challenge to the sentence itself due to an erroneous PSI under 28 U.S.C.

### Federal Rule of Criminal Procedure 32(c)(3)(D)

Plaintiff urges this court to give retroactive application to Federal Rule of Criminal Procedure 32(c)(3)(D). This subsection of the rule became effective on August 1, 1983, more than two years after Ostrer's New York sentencing. The amended rule ensures that the sentencing judge will resolve claims of inaccuracy in a PSI.

Rule 32(c)(3)(D) provides:

If the comments of the defendant and his counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons or the Parole Commission.

The Notes of the Advisory Committee state that the amended rule "is intended to ensure that [the record as to the resolution of the PSI dispute] comes to the attention of the Bureau or Commission when these agencies utilize the presentence investigation report ... New subdivision (c)(3)(D) does not impose an onerous burden. It does not even require the preparation of a transcript."

It is significant, however, that under the rule a convicted defendant may challenge a PSI, yet no resolution will be made if *the controverted matter "will not taken into account in sentencing."* Ostrer has not claimed that his sentence was based on an inaccurate PSI.[2] Accordingly, the court finds that Rule 32(c)(3)(D) is not applicable to the situation here. *United States v.*

§ 2255 is properly made to the sentencing judge." Ex. T *Rivera,* B 83–349 (EBB), at 3, *see*

*Leath,* 711 F.2d 119, 120 (8th Cir.1983) (prisoner sought only to remove allegedly erroneous information from PSI, therefore his motion did not concern sentencing); *see also United States v. Rone,* 743 F.2d 1169 (7th Cir.1984) (Rule 32(c)(3)(D) applied where prisoner claims incorrect sentencing); *United States v. Johnson,* 607 F.Supp. 258, 263–64 (N.D.Ill.1985) (Rule 32(c)(3)(D) applied retroactively where prisoner claims incorrect sentencing).

### Conclusion

The court DISMISSES Plaintiff's action for failure to exhaust administrative remedies. To hold otherwise "would only frustrate the remedial scheme." *Maynard,* 727 F.2d at 441.

The court will not reach the alternate grounds of the defendants' motion to dismiss.

*Napoles v. United States,* 536 F.2d 722, 726 (7th Cir.1976) (a section 2255 motion should be heard in the court whose proceedings are being attacked).