Edgar J. BOWSER, III,
Plaintiff, Appellant,

v.

George A. VOSE, Jr., et al.,
Defendants, Appellees.

No. 91–1654.

United States Court of Appeals,
First Circuit.

Submitted Feb. 10, 1992.

Decided June 30, 1992.

Edgar J. Bowser, III, on brief pro se.

Nancy Ankers White, Sp. Asst. Atty. Gen. and Sondra M. Korman, Counsel, Dept. of Correction, on brief, for defendants, appellees.

Before BREYER, Chief Judge,
CAMPBELL, Senior Circuit Judge, and
SELYA, Circuit Judge.

PER CURIAM.

At issue here is whether a prison inmate's wish to continue participating in the Massachusetts furlough program rises to the level of a Fourteenth Amendment liberty interest. The district court (adopting the report of a magistrate-judge) held that it does not, and that a decision to suspend an inmate from that program thus need not be accompanied by due process protections. We agree and therefore affirm the dismissal of plaintiff's complaint under Fed. R.Civ.P. 12(b)(6).

I.

The facts, drawn from plaintiff's pro se complaint and construed in his favor, are straightforward. Since October 1976, Edgar Bowser has been serving a life sentence for the second-degree murder of a Shrewsbury police officer (along with a 3–5 year sentence for armed robbery). In May 1985, he was transferred from a medium to a minimum security prison (MCI–Shirley). There, in conformance with regulations of the Department of Correction (DOC), to be discussed *infra*, he was approved for par-

ticipation in the furlough program.[1] Over the next three and one-half years, plaintiff completed 49 separate furloughs without incident. He also remained free of disciplinary infractions during that period. On January 3, 1989, however, he was transferred back to a medium security prison (MCI–Concord), without being offered an explanation. Following a hearing on January 20, the classification board voted to return plaintiff to the minimum security facility. On February 1, however, at the recommendation of the MCI–Concord Superintendent, the DOC Associate Deputy Commissioner rejected this decision. Citing "recent interest of P.D." (police department), he instead ordered plaintiff's transfer to MCI–Norfolk, another medium security prison. In a March 21 letter to plaintiff, the DOC Deputy Commissioner explained this decision in more detail. The Department, he indicated, had decided to suspend plaintiff's participation in the furlough program because of a "strong statement of community opposition by a Law Enforcement Agency regarding your presence in the community." And the decision had been made to place plaintiff in medium security because of, *inter alia*, "our concern of your reaction to being suspended" from the program. These actions were described as "not disciplinary in nature." Plaintiff later learned that the "law enforcement agency" that had objected to his furloughs was the Shrewsbury Police Department.

Bowser filed suit under 42 U.S.C. § 1983 in October 1989. He claimed that defendants [2] violated his civil rights under federal and state law by suspending him from the furlough program and subsequently transferring him to medium security. In particular, he alleged a due process violation in that community opposition was an impermissible basis for denying furloughs. And he alleged an equal protection violation in that no other inmate had been denied furloughs on that ground. Plaintiff sought declaratory and injunctive relief and damages; his prayer for injunctive relief asked that he be returned to MCI–Shirley, be restored to "positive furlough status" and be approved for furlough participation equal to that which he had earlier enjoyed. The district court, as mentioned, dismissed the complaint for failure to state a claim, and plaintiff now appeals. The due process argument is the sole issue raised.

## II.

"Liberty interests protected by the Fourteenth Amendment may arise from two sources—the Due Process Clause itself and the laws of the States." *Hewitt v. Helms*, 459 U.S. 460, 466, 103 S.Ct. 864, 868–69, 74 L.Ed.2d 675 (1983). Plaintiff argues that each of these sources provides him with a liberty interest in continued participation in the Massachusetts furlough program. We disagree in both respects.

■ It is clear that the denial of a furlough implicates no inherent liberty interest. Various courts have so held, *see, e.g., Baumann v. Arizona Dep't of Corrections*, 754 F.2d 841, 843–44 (9th Cir.1985); *Morris v. McCotter*, 773 F.Supp. 969, 971 (E.D.Tex.1991); *cf. Joihner v. McEvers*, 898 F.2d 569, 571 (7th Cir.1990) (no such interest in receiving transfer to work camp), and plaintiff does not seriously contend otherwise. Indeed, the Supreme Court has found no inherent liberty interest in the receipt of parole, *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 9–11, 99 S.Ct. 2100, 2104–06, 60 L.Ed.2d 668 (1979), or good-time credits, *Wolff v.*

---

**1.** The Massachusetts furlough program permits an inmate "under prescribed conditions to be away from [a] correctional facility ... for a specified period of time, not to exceed fourteen days during any twelve month period nor more than seven days at any one time." Mass.Gen.L. ch. 127, § 90A. The statute enumerates six general purposes for which a furlough may be awarded: to attend a relative's funeral, to visit a critically ill relative, to obtain medical or social services, to contact prospective employers, to secure a residence for use upon release, and "for any other reason consistent with the reintegration of a committed offender into the community." *Id.*

**2.** Named as defendants were the Deputy Commissioner of Correction, the Associate Commissioner of Correction, and the Superintendent of MCI–Concord.

*McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974)—each of which involves a quantum of liberty greater than that at issue here. Instead, plaintiff argues that his situation is more analogous to cases involving the *revocation* of parole or probation—cases in which an independent liberty interest has been found. *See Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). He points to the *Greenholtz* opinion, in which the Court distinguished between parole revocation and parole release by observing: "There is a crucial distinction between being deprived of a liberty one has, as in parole, and being denied a conditional liberty that one desires." 442 U.S. at 9, 99 S.Ct. at 2105. In plaintiff's view, because he had received (and successfully completed) 49 separate furloughs, he "had" a liberty interest which could not be revoked without due process.

■ This argument misses the mark. To be sure, once an inmate has been permitted to leave the prison and experience some of the freedoms enjoyed by parolees and probationers, depriving him of further opportunities to do so effects a considerable loss of liberty. Yet the Court has rejected "the notion that *any* grievous loss visited upon a person by the State is sufficient to invoke the procedural protections of the Due Process Clause." *Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). And the loss involved here is far different from that involved in *Morrissey* and *Gagnon:* "unlike the parolee or the probationer ..., the furloughed prisoner is on a short string. His freedom is not potentially unlimited in duration even upon compliance with the official rules." *Smith v. Saxbe,* 562 F.2d 729, 734 n. 18 (D.C.Cir.1977). In addition, a

denial of continued furloughs simply relegates a prisoner to "the conditions or degree of confinement ... within the sentence imposed...." *Montanye v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976). For these reasons, courts have consistently held that prisoners have no inherent liberty interest in continuing to participate in furlough (or other temporary release) programs.[3] *See, e.g., Smith,* 562 F.2d at 734–35 (furloughs); *O'Bar v. Pinion,* 953 F.2d 74, 83–84 (4th Cir.1991) (work-release); *Codd v. Brown,* 949 F.2d 879, 882 (6th Cir.1991) (same); *Whitehorn v. Harrelson,* 758 F.2d 1416, 1420–22 (11th Cir.1985) (same); *see also Lanier v. Fair,* 876 F.2d 243, 246 (1st Cir. 1989) (no inherent liberty interest in remaining in halfway house); *Brennan v. Cunningham,* 813 F.2d 1, 5–6 (1st Cir. 1987) (same); *Garcia v. De Batista,* 642 F.2d 11, 14 (1st Cir.1981) (same).

We therefore turn to state law. "[A] State creates a protected liberty interest by placing substantive limitations on official discretion." *Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983). While this may be accomplished in a number of ways, "the most common manner ... is by establishing 'substantive predicates' to govern official decision-making ... and, further, by mandating the outcome to be reached upon a finding that the relevant criteria have been met." *Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 462, 109 S.Ct. 1904, 1909, 104 L.Ed.2d 506 (1989) (quoting *Hewitt,* 459 U.S. at 472, 103 S.Ct. at 871). As the *Thompson* Court indicated, a liberty interest is created only if "the regulations contain 'explicitly mandatory language,' *i.e.,* specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow." 490 U.S. at 463,

---

**3.** Contrary to plaintiff's corollary suggestion, he acquired no entitlement to future furloughs merely because he had received them in the past. Nothing in the then-applicable statute or regulations created any presumption in this regard, let alone any such entitlement. While plaintiff was "certified" for furloughs under the DOC regulations, this procedure simply facilitated the processing of furlough applications. *See*

103 CMR § 463.10 (1986). Receiving such certification created no presumption that future furloughs would be granted. Nor was any procedure prescribed therein for "revoking" furlough status. Instead, as described below, these enactments simply enumerated various criteria governing the award of furloughs. And they indicated that each furlough application was to be decided on a case-by-case basis.

109 S.Ct. at 1910 (quoting *Hewitt*, 459 U.S. at 471–72, 103 S.Ct. at 871). While words such as "shall," "will," or "must" are typically cited as paradigms of explicitly mandatory language, *see, e.g., Rodi v. Ventetuolo*, 941 F.2d 22, 25 (1st Cir.1991), no "particular formula" is required, *Brennan*, 813 F.2d at 8.[4] The basic question is whether "the regulations are ... worded in such a way that an inmate could reasonably expect to enforce them against the prison officials." *Thompson*, 490 U.S. at 465, 109 S.Ct. at 1911.

No liberty interest derives from the furlough statute itself, since that enactment is phrased in discretionary terms.[5] Plaintiff instead relies on the implementing regulations, 103 CMR §§ 463.01–463.17 (1989). The relevant provisions are as follows:

> 463.07: *General Eligibility Requirements*
>
> (1) *Purposes*
>
> (a) A resident shall be authorized to receive a furlough for the following purposes only: [listing the six purposes described in note 1 *supra*].
>
> (2) Time
>
> (a) A resident of any state correctional facility shall be eligible for fourteen furlough days during his furlough year, but for no more than seven consecutive furlough days.
>
> (b) A resident shall be eligible to be considered for a furlough under the following conditions:
>
> 1. ....
>
> 2. A resident serving life sentences ... shall be required to serve three years from the effective date of sentence....
>
> 463.08: *Specific Eligibility Requirements*
>
> (1) *Furloughs.*
>
> (a) A resident who satisfies one of the [six enumerated] purposes ... and for whom there is reasonable cause to believe that the trust extended to that resident while on furlough will be honored, shall be eligible for a furlough. A decision to approve a furlough shall be based upon the resident's ability to conduct himself responsibly while in the community. In considering responsibility, the past and present conduct of the resident shall be reviewed, including his prior furlough history, if any, program and activity participation, any record of escapes or attempted escapes and an inquiry ... into whether the resident can be trusted to return to the correctional facility at a designated time and not commit any criminal acts while on furlough.

These eligibility requirements do constitute substantive predicates intended to guide the decision whether to grant a furlough. And the fact that several of these criteria—*i.e.*, trustworthiness; responsibility—are subjective and predictive does not negate the possibility of a liberty interest. *See Board of Pardons v. Allen*, 482 U.S. 369, 374–76, 107 S.Ct. 2415, 2418–20, 96 L.Ed.2d 303 (1987).

Absent from the regulations, however, is any mandatory language directing that a furlough *must* be granted to any inmate who satisfies the eligibility requirements. The fact that the word "shall" appears at various points does not avail plaintiff. "[T]he mandatory language requirement is not an invitation to courts to search regulations for *any* imperative that might be found. The search is for *relevant* mandatory language...." *Thompson*, 490 U.S. at 464 n. 4, 109 S.Ct. at 1911 n. 4. The regulations simply state that an inmate sat-

---

**4.** In this regard, it is perhaps helpful to differentiate between (1) state rules governing the imposition of sanctions (such as administrative segregation in *Hewitt*) or the revocation of privileges (such as visitation rights in *Thompson*), and (2) those governing the award of privileges (such as parole in *Board of Pardons v. Allen*, 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987)). In the former category, the central inquiry is whether the sanction can be imposed (or the privilege revoked) *only* when one or more of the substantive criteria are met. In the latter cate-

gory, the central inquiry is whether the privilege *must* be granted when (or unless) one or more of the criteria are met.

**5.** The statute provides in relevant part: "The commissioner *may* extend the limits of the place of confinement.... Such authorization *may* be granted for any of" the six purposes described in note 1 *supra*. Mass.Gen.L. ch. 127, § 90A (emphasis added).

isfying the listed criteria shall be "eligible" for parole. And eligibility is not the same as entitlement. *See, e.g., Francis v. Fox,* 838 F.2d 1147, 1149 (11th Cir.1988) (regulation "states not who *must* receive work-release, but simply who is *eligible* for work-release; the Corrections Department still must exercise discretion in choosing suitable prisoners"); *Mahfouz v. Lockhart,* 826 F.2d 791, 793 (8th Cir.1987) (same). Similarly, the language in § 463.08(1)(a)— stating that a "decision to approve a furlough shall be based upon the resident's ability to conduct himself responsibly"— imposes no restrictions as to when a furlough can be denied.

The regulations at no point state that an inmate "shall" be released "when," or "if," or "subject to," or "unless"—terminology that has been held to create a liberty interest in this context. *See, e.g., Allen,* 482 U.S. at 378, 107 S.Ct. at 2421; *Greenholtz,* 442 U.S. at 11–12, 99 S.Ct. at 2106; *Bermudez v. Duenas,* 936 F.2d 1064, 1067 (9th Cir.1991). Rather, the language here is akin to that which courts have found insufficient to create such an interest. *See, e.g., Inmates v. Ohio State Adult Parole Auth.,* 929 F.2d 233, 237 (6th Cir.1991) ("may" be released "unless"); *Dace v. Mickelson,* 816 F.2d 1277, 1281–82 (8th Cir. 1987) ("may" be released "when"; specified criteria "shall" be considered); *Canterino v. Wilson,* 869 F.2d 948, 951 n. 2, 953–54 (6th Cir.1989) ("no prisoner who" satisfies criteria "shall be released").

Other provisions in the regulations reinforce the discretionary nature of the decision to grant or deny a furlough. The section entitled "Explanation" states that the regulations "prescribe the conditions under which a resident *may* have the limits of his place of confinement extended." 103 CMR § 463.05 (emphasis added). Designated officials are authorized to defer or deny furlough applications "for reasons including *but not limited to* incomplete or inaccurate information on an application or any other relevant material, or for further verification of the details of the plan of the resident in the community." *Id.* § 463.-09(3)(c), (4)(c) (emphasis added). And the regulations give officials total discretion to revoke certification, *id.* § 463.10(2)(c), and to cancel previously approved furloughs, *id.* § 463.11(6)(b).

For these reasons, we do not think that plaintiff could "reasonably form an objective expectation that [additional furloughs] would necessarily be allowed" so long as he continued to meet the eligibility requirements. *Thompson,* 490 U.S. at 465, 109 S.Ct. at 1911. The furlough regulations, therefore, cannot be said to create a liberty interest protected under the Fourteenth Amendment.

*Affirmed.*