USCA1 Opinion

 

 April 8, 1994 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1566 FRED WOODARD, Plaintiff, Appellant, v. ROBERT P. GITTENS, ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. A. David Mazzone, U.S. District Judge] ___________________ ____________________ Before Breyer, Chief Judge, ___________ Torruella and Selya, Circuit Judges. ______________ ____________________ Fred Woodard on brief pro se. ____________ Nancy Ankers White, Special Assistant Attorney General, and Joel __________________ ____ J. Berner on brief for appellees. _________ ____________________ ____________________ Per Curiam. The judgment of the district court is __________ affirmed substantially for the reasons stated in the district court's April 29, 1993 memorandum and order. In addition, we must consider one claim that the district court did not specifically address in its opinion. Woodard alleged that even though applicable Department of Correction regulations were not changed until 1987 to delete Alcoholics Anonymous and drug counseling from the list of programs for which prisoners could get good-time credit, in 1981 the Department of Correction issued a policy memorandum eliminating good-time credit for these programs. From 1981 or 1982 to 1987, the Department followed this memorandum, not the regulations. Woodard further alleged, and defendants have not disputed, that the Massachusetts Superior Court ruled in a 1991 case (cited by Woodard as Cleary v. Rakie, no. 90-6387 ______ _____ (Middlesex Super. Ct. 1991) (unpublished)), that this 1981-87 practice had been improper because it contravened the then- governing regulations. The court allegedly directed the Department to comply with the regulatory mandate and retroactively award prisoners good-time credit for satisfactory participation in these programs during the 1981- 87 period. Neither party has supplied this court with a copy of the Superior Court decision, which is not in the record. Woodard filed as an attachment below a March 18, 1992 memorandum from defendant DuBois, the Commissioner of Correction, advising corrections personnel, "Recently, the Middlesex Superior Court issued a decision declaring invalid the Department of Correction's 1981 policy memorandum which made certain programs ineligible for earned good time credits." The memorandum directed corrections personnel to "begin on or before March 27, 1992" to recalculate good-time credit and release dates for each inmate to reflect appropriate credit for participation in these programs during the 1982-87 period. This March 27 deadline was less than two weeks before Woodard's release from prison on April 8, 1992. Woodard alleges that his release date was never recalculated. On this basis, Woodard argues that the denial of good-time credit for participation in these programs during 1981-87, in apparent contravention of applicable regulations, violated his constitutional rights. We disagree. The Department's 1981 policy memorandum, whatever its status under state law, did not violate the ex post facto clause of the Constitution, art. 1, 10, cl. 1, for the same reasons -- stated by the district court -- that the 1987 change in the regulations did not. After the 1981 policy memorandum, Woodard remained eligible for exactly the same total amount of good-time credit, for participation in a wide range of available programs, as he had been before. All that changed was that he had to select programs other than Alcoholics Anonymous and drug counseling to earn such credit. Consequently, the unavailability of these particular programs -3- did not establish a regime that was more onerous to him. For that reason, the 1981 policy memorandum, like the 1987 regulations, did not "substantially alter . . . the consequences attached to a crime already completed, and therefore change . . . 'the quantum of punishment.'" Weaver ______ v. Graham, 450 U.S. 24, 33 (1981) (quoting Dobbert v. ______ _______________ Florida, 432 U.S. 282, 293-94 (1977)). _______ Since 1983 requires violation of a federal _______ constitutional or statutory right, mere failure properly to follow state law or regulations cannot provide the basis for _____ a 1983 claim. See Pennhurst State School & Hosp. v. ____________________________________ Halderman, 465 U.S. 89, 106 (1984); Quintero de Quintero v. _________ _____________________ Aponte-Roque, 974 F.2d 226, 230 (1st Cir. 1992). The ____________ Constitution itself does not guarantee a right to earn good- time credits. Wolff v. McDonnell, 418 U.S. 539, 557 (1974). _____ _________ The only argument remaining for Woodard, therefore, is that the Department's failure to award good-time credits for participation in these programs during the 1981-87 period violated a constitutionally protected liberty interest based in state law. "A State creates a protected liberty interest by placing substantive limitations on official discretion." Bowser v. Vose, 968 F.2d 105, 107 (1st Cir. 1992) (quoting ______ ____ Olim v. Wakinekona, 461 U.S. 238, 249 (1983)). Even where ____ __________ applicable statutes create no liberty interest, administrative regulations may do so if they contain -4- "specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow." Kentucky Dep't of Corrections v. _______________________________ Thompson, 490 U.S. 454, 463 (1989). See Rodi v. Ventetuolo, ________ ___ ____ __________ 941 F.2d 22, 26 (1st Cir. 1991). The Massachusetts statute governing good-time credits states: "For the . . . satisfactory performance of said inmates in any other program or activity which the superintendent of the institution shall deem valuable to said prisoner's rehabilitation, the commissioner may grant . . . a ___ further deduction of sentence . . . ." Mass. Gen. Laws c. 127, 129D (1993). No liberty interest in earning good-time credit derives from this statute because the statute places the award of good-time credit within the discretion of the Commissioner. Cf. Bowser, supra, 968 F.2d at 109 (courts __________ _____ have found use of language such as "may" insufficient to create a liberty interest). The 1978 Department of Correction regulations, in effect during the 1981-87 period, provided, "A resident for his satisfactory conduct, satisfactory completion, or satisfactory performance in a program or activity may receive ___ a deduction from sentence of not more than seven and one half days a month." 103 Code of Mass. Regs. 411.09(1) (1978) (emphasis added). The regulations granted the determination whether or not to award a sentence reduction to the -5- Commissioner, id. 411.10(10-12), and did not state any __ criteria -- beyond the requirement of satisfactory conduct, completion, or performance -- by which the Commissioner's determination was to be governed. Like the statute, these regulations contained neither substantive predicates nor mandatory language to limit the Commissioner's discretion in his determination whether to award good-time credit for participation in a particular program. For that reason, they did not create a liberty interest. The only relevant mandatory language may be found in 411.08(1)(g), which stated that the activities which would carry eligibility for good-time credit "shall include _____ but not be limited to . . . alcoholics anonymous, or drug counseling." Id. 411.08(1)(g) (emphasis added). The most ___ that this language mandated, however, was that if an inmate participated in one of these programs, the inmate would be entitled to a discretionary determination by the Commissioner whether the participation was "satisfactory" and whether good-time credit would be awarded. In other words, this provision, at most, mandated only that an inmate be accorded a particular procedure, not that an inmate receive a particular outcome if specified substantive criteriawere met. Such a provision -- mandating a procedure only -- does not create a liberty interest. Ewell v. Murray, 11 F.3d _____ ______ -6- 482, 488 (4th Cir. 1993) ("inmates do not have a protected liberty interest in the procedures themselves, only in the _____________________ subject matter to which they are directed") (emphasis in original). Accordingly, the 1981 policy memorandum did not deprive Woodard of a constitutionally protected liberty interest -- regardless of whether it may have violated state law -- when it removed these programs from the list of those carrying eligibility for good-time credit. Nor did defendants deprive Woodard of a constitutionally protected liberty interest if, as alleged, they failed in 1992 to review his record of participation in these programs during the 1981-87 period to determine whether a retroactive award of good-time credit was appropriate. The judgment of the district court is affirmed. ________ -7-