**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
———————

Nos. 16-4405 and 17-1555
———————

WILLIAM L. BURRELL, JR.,
                                        Appellant

v.

PATRICK LOUNGO, individually; RICHARD GLADDYS, individually;
ED ADAMS, individually; RICHARD SAXTON, individually;
TRISH CORBETT, individually; ROBERT MCMILLAN, individually;
TOM STAFF, individually; BRIAN JEFFERS, individually;
JACK MCPHILLIPS, individually; TODD FRICK, individually;
JOHN CRAIG, individually; LOUIS DENAPLES, individually;
DOMINICK DENAPLES; THOMAS CUMMINGS; APRIL PHILLIPS;
UNKNOWN AGENTS, Individually and Officially;
THOMAS A. MARINO, individually and Officially; ANDREW J. JARBOLA,
individually and as head DA & Individually as prison board member;
JOSEPH MARUT, individually; COREY O'BRIEN, individually and as a prison board
member; PATRICK O'MALLEY, individually and as a prison board member;
GARY DIBILEO; JIM WANSACZ, individually and as prison board member;
SHERIFF MARK MCANDREW;
VITO P. GEROULO, Individually and as prison board member;
LACKAWANNA RECYCLING CENTER, INC.; JOHN DOES 1 AND 2
———————————————————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(M.D. Pa. No. 3-14-cv-01891)
District Judge:  Honorable Robert D. Mariani
———————————————————

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 24, 2017

Before:  GREENAWAY, JR., GREENBERG, and ROTH, <u>Circuit</u> <u>Judges</u>

(Opinion filed: September 12, 2018)

_____

OPINION[*]
_____

PER CURIAM

William L. Burrell, Jr., appeals from the judgment of the United States District Court for the Middle District of Pennsylvania.  We conclude that the District Court properly dismissed some of Burrell's claims, but we conclude that other claims should have survived the screening process.  We will thus remand for further proceedings.

I.

In 2014, the Court of Common Pleas for Lackawanna County, Pennsylvania, held Appellant William Burrell in civil contempt for failure to comply with his child support obligations.  The court ordered him to serve up to one year in the Lackawanna County Prison ("the LCP"), subject to "immediate work release if he qualifies."  The order indicated that he would be released upon payment of the $7033 that he owed ("or a lesser amount if agreeable by the domestics officer and/or a wage attachment").  Amend.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Compl., Dkt. #11, ¶¶ 158, 179, 181.  Shortly after being incarcerated, the Court of Common Pleas, on petition of some of the Defendants, see id. at ¶ 163, 172, placed Burrell in the LCP Community Service Program.  Under that program, Burrell resided in the LCP but spent time working at the Lackawanna Recycling Center ("the LRC").  Burrell ultimately spent 63 days working at the LRC, earning $5 per day toward the fulfillment of his child support obligation.  He was released from prison after serving about 4.5 months of his sentence.

Immediately after Burrell's release, he filed a pro se civil rights complaint in the District Court.  He subsequently filed a 115-page amended complaint, naming over two dozen defendants and raising 20 claims.  The District Court referred the amended complaint to the Magistrate Judge, who screened it pursuant to 28 U.S.C. § 1915(e)(2).  As the Magistrate Judge aptly stated, the amended complaint

> alleges the existence of a broad conspiracy involving the Lackawanna County Domestic Relations Office, the Lackawanna County Court of Common Pleas, [the LCP], and the [LRC].  He claims that the defendants are all part of an extensive conspiracy or racketeering enterprise designed to furnish cheap labor to the privately owned recycling center.  He claims that the state court and its domestic relations office routinely manipulate child support enforcement proceedings to obtain civil contempt findings against men who are financially unable to meet their child support obligations[,] . . . [and] then [] sentence them to be incarcerated as civil contemnors at [LCP], where they are assigned to work at the recycling center in substandard conditions and for meager pay.

Mag. J. Report entered July 18, 2016, Dkt. #34 at 3-4.

In July 2016, the Magistrate Judge issued a 59-page report, recommending that the District Court dismiss the amended complaint and give Burrell an opportunity to file a second amended complaint. Burrell objected to the report, and he also moved to recuse the presiding District Judge. On December 8, 2016, the District Court denied the motion to recuse, overruled Burrell's objections to the report, adopted the report, and dismissed the amended complaint without prejudice to his ability to file a second amended complaint within 21 days. On December 22, 2016, Burrell filed a notice of appeal challenging the District Court's December 8 rulings. This appeal was docketed at C.A. No. 16-4405; on December 28, our Clerk listed it for possible dismissal due to a jurisdictional defect, noting that it might be premature.

On January 6, 2017, Burrell moved the District Court for an extension of time to file a second amended complaint; however, on January 18, he filed (in both the District Court and our Court) a "Notice of Intent to Stand on Amended Complaint."[1] On January 19, the Magistrate Judge (1) denied Burrell's extension request as moot, and (2) issued a report recommending that, in light of Burrell's decision to stand on his amended complaint, the District Court close the case. On February 23, the District Court adopted that recommendation. On March 10, Burrell filed a second notice of appeal, challenging this latest order; this second appeal was docketed at C.A. No. 17-1555.

---

[1] That notice ended with the following statement: "Should plaintiff lose his appeal[,] he reserves the right to amend his complaint."

II.

We have jurisdiction pursuant to 28 U.S.C. § 1291.  Our review of the District Court's sua sponte dismissal under 28 U.S.C. § 1915(e)(2)(B)(ii) is plenary.  See Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000).  Pro se complaints must be construed liberally, see Erickson v. Pardus, 551 U.S. 89, 94 (2007), and we accept the factual allegations contained in the complaint as true.  Bell Atl.Corp. v. Twombly, 550 U.S. 544, 572 (2007).  But "we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

As an initial matter, Burrell argues that the District Court, having granted him the privilege of proceeding in forma pauperis ("IFP"), could not dismiss his complaint prior to serving it on the Defendants.  In support of his argument, Burrell cites Oatess v. Sobolevitch, 914 F.2d 428, 430 (3d Cir. 1990), and Roman v. Jeffes, 904 F.2d 192, 195 (3d Cir. 1990).  But we agree with the District Court that both of those cases interpreted an earlier version of the IFP statute.  The current statute provides that a judge should dismiss "at any time" a complaint that is frivolous, fails to state a claim upon which relief may be granted, or seeks relief against an immune defendant.  28 U.S.C. § 1915(e)(2); cf. Buchheit v. Green, 705 F.3d 1157, 1160-61 (10th Cir. 2012) (nothing in IFP statute

5

requires court to screen case before granting IFP status, or before service of summons).[2]
The District Court thus had the authority to dismiss the complaint after granting IFP, but before serving the complaint on the Defendants. We now turn to Burrell's various claims, first discussing those that the District Court properly dismissed at the screening stage, followed by a discussion of claims that Burrell may pursue after remand.

### III. Claims Properly Dismissed

#### A. Claims under the Federal Tort Claims Act ("FTCA")

The District Court dismissed without prejudice Burrell's claims that he sought to bring under the FTCA, because he failed to allege that he had exhausted his administrative remedies. Under 28 U.S.C. § 2675(a), a plaintiff may not bring a claim under the FTCA unless he "first presents the claim to the appropriate federal agency and the agency renders a final decision on the claim." Shelton v. Bledsoe, 775 F.3d 554, 569 (3d Cir. 2015). The requirement that the plaintiff exhaust his claims before filing a

---

[2] Burrell also cites a non-precedential decision of our Court, in which we cited Rule 4(c)(3) of the Federal Rules of Civil Procedure, and stated parenthetically that if a "plaintiff is granted [the] privilege of proceeding IFP, [the] District Court *must* enter an order 'that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court'." Marin v. La Paloma Healthcare Ctr., 636 F. App'x 586, 587 n.1 (3d Cir.) (not precedential per curiam opinion), cert. denied, 137 S. Ct. 108 (2016). But Burrell reads that quotation out of context—we were explaining that if a plaintiff is granted IFP *and the complaint is to be served*, then that service must be made as provided in the Rule. The sentence referred to whether the District Court could dismiss a complaint for failure to prosecute without arranging to make service of process as provided by Rule 4(c)(3), not whether a district court can dismiss a complaint for failure to state a claim before service of process. Indeed, in Marin we *affirmed* the District Court's pre-service dismissal of the complaint for failure to state a claim upon

6

complaint is "jurisdictional and cannot be waived." Id. Burrell argues here that he *did*

allege exhaustion, by stating on page 75 of his amended complaint that he had "sent both

the Pennsylvania Attorney Generals [sic] office and the U.S. Justice Department Notice

of Intent to Sue and has asked them to waive immunity." Amended Complaint, Dkt. #11

at 75, ¶ 267. But assuming arguendo that his "Notice of Intent to Sue" met the statutory

and regulatory requirements, see, e.g., 28 U.S.C. § 2675(a); 28 C.F.R. § 14.2, it is not

clear from the allegations of the complaint that the "agency render[ed] a final decision on

the claim" before Burrell filed his complaint.[3] See Shelton, 775 F.3d at 569.

Burrell argues here that he was not required to exhaust administrative remedies,

because the statute does "not apply to such claims as may be asserted under the Federal

Rules of Civil Procedure by third party complaint, cross-claim, or counterclaim." 28

U.S.C. § 2675(a). Burrell explains that after he filed his initial complaint, he met with

FBI Special Agent April Philips, and that it was not until then that he "learned of the FBI

and [Defendant Thomas] Marino's liability." App. Br. at 16. He then amended his

complaint to include the FTCA claims against Marino and Philips.[4] But Burrell confuses

which relief could be granted. Id. at 587.

[3] Section 2675(a) provides in part that "[t]he failure of an agency to make final
disposition of a claim within six months after it is filed shall, at the option of the claimant
any time thereafter, be deemed a final denial of the claim for purposes of this section."
But the allegations of the complaint do not give any hint about when Burrell might have
filed a claim, nor whether the agency responded.

[4] As the District Court aptly pointed out, FTCA claims may only be brought against the
United States. See CNA v. United States, 535 F.3d 132, 138 n.2 (3d Cir. 2008). Because

"third-party complaint" with "amended complaint." Indeed, because Burrell concedes that he did not learn of his FTCA claims until after he filed his initial complaint, he necessarily did not exhaust his remedies as to those claims before his complaint was filed. See McNeil v. United States, 508 U.S. 106, 112 (1993) ("Congress intended to require complete exhaustion of Executive remedies before invocation of the judicial process.").[5] Because the allegations of the complaint were not sufficient to indicate that the District Court had jurisdiction over Burrell's FTCA claims, the District Court properly dismissed those claims without prejudice.

B.      Judicial Defendants

Burrell argues that the District Court improperly dismissed the state judicial defendants on the grounds of absolute immunity. "A judicial officer in the performance of his duties has absolute immunity from suit and will not be liable for his judicial acts." Azubuko v. Royal, 443 F.3d 302, 303 (3d Cir. 2006) (per curiam). A judge retains that immunity even if "the action he took was in error, was done maliciously, or was in excess of his authority; . . . he will be subject to liability only when he has acted in the 'clear

Burrell had not exhausted his administrative remedies, there was no need for the Court to substitute the United States as a defendant. See United States v. Smith, 499 U.S. 160, 164 n.5 (1991).

[5] In October 2016, Burrell filed a motion in the District Court, to which he attached what appear to be FTCA claim documents, filed in September 2016. See Dkt. ##41-2, 41-3, 41-4. But those documents, dated months after the date he filed his complaint here, obviously could not constitute "exhaustion" for purposes of claims raised in the amended complaint.

absence of all jurisdiction.'" Stump v. Sparkman, 435 U.S. 349, 356-57 (1978). Burrell's claims against the state court judges involved the orders that those judges signed in the child support enforcement proceedings—orders within those judges' jurisdiction. Burrell now argues that it is the *policy* behind those orders that he challenges, but his assertion that there is a judicial policy requiring civil contemnors to work at the recycling plant is purely speculative. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (dismissal appropriate when a complaint has not alleged sufficient facts to state a claim for relief that is "plausible on its face"). The District Court thus properly dismissed the state judicial defendants.

C.      Quasi-Judicial Immunity for Domestic Relations Staff

Burrell's complaint included claims against three members of the Lackawanna County Domestic Relations Office. We agree with the District Court that any claims against these Defendants for their actions in charging and prosecuting Burrell for his failure to pay child support do not survive screening because these Defendants are entitled to quasi-judicial immunity for such actions. See Hughes v. Long, 242 F.3d 121, 125 (3d Cir. 2001) ("[C]hild welfare workers are entitled to absolute immunity for their actions on behalf of the state in preparing for, initiating, and prosecuting dependency proceedings, and . . . this immunity [is] broad enough to include the formulation and presentation of recommendations to the court in the course of the proceedings."). Burrell argues that his claims state an exception to this immunity, because the Defendants used

9

false statements in obtaining an arrest warrant against him, but to the extent the Defendants were acting as advocates of the state court, such claims are also barred by quasi-judicial immunity. Cf. Yarris v. County of Delaware, 465 F.3d 129, 139 (3d Cir. 2006) (prosecutor alleged to have solicited false testimony absolutely immune to extent the conduct occurred while acting as an advocate rather than an investigator).

D.       Section 1985(3) and Equal Protection Claims

Burrell's claims under 42 U.S.C. § 1985(3) are based on an allegation that the Defendants conspired to violate the constitutional rights of men who have not met their child support obligations. We agree with the District Court that "men" could constitute a protected class, but that Burrell did not plausibly allege that the Defendants acted "because of" his gender. Cf. Iqbal, 556 U.S. at 681 (despite plaintiff's allegations that defendants designated him as being "of high interest" because of his race, religion, or national origin, allegations were not sufficient in light of "more likely explanations"). And Burrell's alternative classification—men who have not met their child support obligations—is not the type of class of persons that Congress sought to protect. Cf., e.g., Farese v. Scherer, 342 F.3d 1223, 1229 n.7 (11th Cir. 2003) ("prisoners" not a protected class under § 1985(3)).

His Equal Protection Clause claims similarly fail, as Burrell did not plausibly allege that he was discriminated against on the basis of his gender, and "men who have not met their child support obligations" is not a suspect class. See City of New Orleans

10

v. Dukes, 427 U.S. 297, 303 (1976) ("Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest."). Further, Burrell's allegation that he was treated differently than women who have not met support obligations is purely speculative. We thus hold that the District Court properly dismissed the § 1985(3) and Equal Protection claims.

E.     First Amendment Retaliation

To make out a First Amendment retaliation claim, the claimant must first establish that he engaged in constitutionally-protected activity. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Burrell did so here—he clearly had a First Amendment right to express his belief that the work environment and library conditions violated his constitutional rights. But his claim fails at the second step—establishing that he suffered some adverse action at the hands of prison officials. Id. Such adverse action must be "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000). Burrell complains that he was scolded and humiliated by the Director of the Recycling Center, but because scolding is not sufficient to establish a First Amendment retaliation claim, see McKee v. Hart, 436 F.3d 165, 173 (3d Cir. 2006), the District Court properly dismissed Burrell's First Amendment retaliation claim for failure to state a claim upon which relief might be granted.

11

F.    Access to Court Claims and Furlough Claims

We will affirm the District Court's dismissal of Burrell's Access to the Court claims, as we agree that Burell showed no prejudice from any delay in receiving civil contempt orders. See Pa. R. Civ. P. 1910.25-6 (no post-trial motions allowed in civil contempt proceedings). We also will affirm the claims that the prison violated Burrell's constitutional rights by denying him furlough to attend an outside church service, and to visit with his son, as he did not have a constitutional right to such furloughs. See Bowser v. Vose, 968 F.2d 105, 106 (1st Cir. 1992) (denial of furlough implicates no inherent liberty interest).

IV.    Claims that Burrell may Pursue after Remand

A.    Conditions of Confinement Claim ("Eighth Amendment")

We agree with the District Court that the Eighth Amendment does not apply to Burrell, as a civil contemnor. See Ingraham v. Wright, 430 U.S. 651, 667-68 (1977) ("In the few cases where the Court has had occasion to confront claims that impositions outside the criminal process constituted cruel and unusual punishment, it has had no difficulty finding the Eighth Amendment inapplicable."); see also id. at 668 (citing Uphaus v. Wyman, 360 U.S. 72, 76 (1959), which involved a civil contemnor's claim that an "'indefinite sentence' imposed upon him constitute[d] such cruel and unusual punishment as to be a denial of due process"). However, it does not follow that a civil contemnor has no constitutional protection against unlawful conditions of confinement.

12

Rather, like the rights of a pretrial criminal detainee, a civil contemnor's rights should be protected by the Due Process Clause. Cf. Steele v. Cicchi, 855 F.3d 494, 501 (3d Cir. 2017) (substantive component of Due Process Clause prevents government from depriving detainee of constitutionally-protected liberty interest). And because those rights under the Due Process Clause are at least as extensive as a convicted prisoner's rights under the Eighth Amendment, see Boring v. Kozakiewicz, 833 F.2d 468, 472 (3d Cir. 1987), the Eighth Amendment effectively "establish[es] a floor of sorts," Kost v. Kozakiewicz, 1 F.3d 176, 188 n.10 (3d Cir. 1993), for a civil contemnor. In other words, if a conditions of confinement claim shows an Eighth Amendment violation, it necessarily shows a violation under the Due Process Clause, too. Accordingly, although the Eighth Amendment technically does not apply to Burrell, the Eighth Amendment standard serves as a useful benchmark for evaluating his conditions of confinement claim.

The Eighth Amendment imposes upon prison officials a duty to provide "humane conditions of confinement." Farmer v. Brennan, 511 U.S. 825, 832 (1994). "That is, prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 256 (3d Cir. 2010) (internal quotation marks omitted). As a general matter, to state a conditions of confinement claim under the Eighth Amendment, the plaintiff must allege facts demonstrating that (1) he

13

was "incarcerated under conditions posing a substantial risk of serious harm"; and (2) the acts or omissions of the prison official(s) reflected deliberate indifference to the plaintiff's health or safety. Farmer, 511 U.S. at 834. When the plaintiff's Eighth Amendment claim concerns his working conditions, he can meet the first prong of this test by alleging facts that show that he was "compelled to perform physical labor which is beyond [his] strength, endangers [his] li[fe] or health, or causes undue pain." Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994) (per curiam) (citing, inter alia, Howard v. King, 707 F.2d 215, 219 (5th Cir. 1983) (per curiam), and Ray v. Mabry, 556 F.2d 881, 882 (8th Cir. 1977) (per curiam)).

In this case, Burrell's amended complaint alleged that his working conditions while incarcerated were as follows.[6] He was issued a uniform, gloves, and boots, but they did not protect him from the hazards of the job. "As a result of picking through garbage [at the recycling center], fecal matter, vomit, rancid juices, and . . . toxic materials got on plaintiff's arms[,] creating something prisoners call 'trash rash[,]' which is an extremely itchy, burning rash[] that lasts all during the work week and fades during the weekends when plaintiff was not working." Amend. Compl. ¶ 190. On a daily basis,

---

[6] Although LCR is apparently a privately-owned facility, Burrell alleged that his work there was overseen by two corrections officers from LCP, both of whom were named as defendants in this case. Accordingly, his conditions of confinement claim does not fail for lack of a state actor. See Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009) ("[A] plaintiff seeking to hold an individual liable under [42 U.S.C.] § 1983 must establish that []he was deprived of a federal constitutional or statutory right by a *state actor*.") (emphasis added).

glass would fly off the conveyer belt, "smash[ing] and splinter[ing] all over plaintiff's face and arms. These tiny pieces of glass got lodged in plaintiff's skin and when he wiped away sweat the glass got lodged deeper into [his] skin." Id. at ¶ 191. The gloves that were provided "were not water or glass resistant and many inmates[,] including plaintiff[,] were cut by glass through their gloves numerous times." Id. at ¶ 192. The boots that were provided "were badly worn with holes in them and many inmates cut their feet through them on jagged pieces of glass on the floor." Id. Additionally, Burrell was exposed to "toxic fumes with no mask," had to use "filthy[,] unsanitary toilets not working or cleaned in months," was required to work in temperatures as high as 105 degrees, and had food taken away from him as punishment. Id. at ¶¶ 193, 363. Burrell alleged that two of the defendants, Corrections Officers Craig and Frick, "oversaw the labor at the recycling center and . . . forc[ed] plaintiff to work [in these conditions]," and that the other defendants knew or should have known about these conditions. Id. at ¶¶ 361, 362.

The District Court concluded, without any discussion, that Burrell had "failed to plausibly allege that he was required to perform physical labor beyond his strength, that his life or health was actually endangered, or that he suffered undue pain." Mag. J. Report, Dkt. #34, at 30. We disagree. Burrell alleges that, as a result of working in the recycling center, his health and safety were endangered in multiple ways — he was exposed to toxic fumes and various unsanitary materials, he suffered from burning rashes,

15

he was cut by glass, he was required to work in excessive heat, and he had to use broken and/or unsanitary toilets. These alleged conditions, when considered in the aggregate, are sufficient to satisfy the first prong of the Eighth Amendment test. Cf. Smith v. Peters, 631 F.3d 418, 419-20 (7th Cir. 2011) (holding that plaintiff's allegations that he was required to use heavy tools in the "freezing cold" without gloves (which caused him to develop blisters) stated a claim under the Eighth Amendment). Furthermore, Burrell's allegations, at least those against Corrections Officers Craig and Frick, are sufficient to satisfy the second prong of the test. See Farmer, 511 U.S. at 837 (explaining that deliberate indifference is established when the prison officials knew and disregarded an excessive risk to the plaintiff's health or safety).

We thus conclude that Burrell's claims concerning his work conditions at the LRC should not have been dismissed at the screening stage.

B.      Thirteenth Amendment and Claims under 18 U.S.C. § 1589

The Thirteenth Amendment abolishes "involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted." And while the Thirteenth Amendment's primary purpose "was to abolish the institution of African slavery as it had existed in the United States at the time of the Civil War, . . . the Amendment was not limited to that purpose; the phrase 'involuntary servitude' was intended to extend 'to cover those forms of compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results.'"

16

United States v. Kozminski, 487 U.S. 931, 942 (1988) (quoting Butler v. Perry, 240 U.S. 328, 332 (1916)).  As the District Court recognized, "involuntary servitude" could encompass peonage, where a person is forced, through a threat of legal sanctions, to work off a debt.  See, e.g., Bailey v. Alabama, 219 U.S. 219, 243 (1911); Clyatt v. United States, 197 U.S. 207, 215-16 (1905).

Of course, as the District Court noted, the Supreme Court has remarked that "in every case in which [it] has found a condition of involuntary servitude, the victim had no available choice but to work or be subject to legal sanction."  Kozminski, 487 U.S. at 943.  And according to Burrell's complaint, he had a "choice"—either work in the LRC or spend an extra six months in prison.  But given the dearth of case law in this area, we conclude that it is not clear, especially at the screening stage, whether this "choice" was sufficient to bring the alleged practice of coercing civil contemnors to work in the LRC out of the range of involuntary servitude.  See Steirer by Steirer v. Bethlehem Area Sch. Dist., 987 F.2d 989, 999 (3d Cir. 1993) abrogation on other grounds recognized by Troster v. Pa. State Dep't of Corr., 65 F.3d 1086, 1087 (3d Cir. 1995) (describing cases where involuntary servitude had been recognized, such as in "labor camps, isolated religious sects, or forced confinement"); cf. Tourscher v. McCullough, 184 F.3d 236, 242 (3d Cir. 1999) (dismissal of complaint before service was premature where inmate held for a time as a pretrial detainee alleged that he was required to work in violation of Thirteenth Amendment).

17

Similarly, under 18 U.S.C. § 1589(a), the Trafficking Victims Protection Act ("TVPA"), a victim may sue for damages and attorney fees (see 18 U.S.C. § 1595) if his labor or services have been obtained "by means of force, threats of force, physical restraint, or threats of physical restraint." Through this statute, "Congress intended to reach cases in which persons are held in a condition of servitude through nonviolent coercion, as well as through physical or legal coercion. Muchira v. Al-Rawaf, 850 F.3d 605, 617 (4th Cir. 2017), as amended (Mar. 3, 2017), petition for cert. filed (U.S. July 31, 2017) (No. 17-154) (quoting United States v. Dann, 652 F.3d 1160, 1169 (9th Cir. 2011)) (internal quotation marks omitted). Again, it may be that Burrell had a sufficient "choice" so that any coercion to work in the LRC did not convert that work into involuntary servitude, but we conclude that the claim deserves more consideration and should not have been dismissed before service of process.[7]

C.     Civil RICO Claims and State Law Claims

The District Court dismissed Burrell's civil RICO claims, in part, because it found that his Thirteenth Amendment and TVPA claims had failed. In light of the discussion above, the District Court should allow Burrell to amend his complaint to include RICO claims, if he chooses. Similarly, the District Court dismissed the state law claims

---

[7] One might argue, of course, that as a civil contemnor who would be released once he paid his child support obligations, Burrell "carr[ied] the keys of [his] prison in [his] own pockets." Turner v. Rogers, 564 U.S. 431, 441-42 (2011). We leave it to the District Court to consider such an argument.

18

because it had dismissed all of the claims over which it had original jurisdiction. Because we are remanding for the District Court to reconsider some of the federal claims, Burrell should be allowed to reassert his state law claims as well.

V.

Finally, Burrell argues that Judge Mariani improperly failed to grant his recusal motion. The fact that Judge Mariani, when in private practice, may have represented the Teamsters Union, which is not a party to this case, does not warrant the Judge's recusal here.

For the foregoing reasons, we will affirm the District Court's judgment in part, vacate in part, and remand for further proceedings. We recommend that the District Court consider appointing counsel for Burrell.